[ECF Nos. 1, 3]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| BRENDA STITH, | |
| Plaintiff, | Civil No. 16-6477 (RMB/KMW) |
| v. | **OPINION** |
| NEW JERSEY TURNPIKE AUTHORITY, | |
| Defendant. | |

**BUMB**, UNITED STATES DISTRICT JUDGE:

THIS MATTER comes before the Court upon the filing of a Complaint and supporting documentation by Plaintiff Brenda Stith ("Plaintiff") against the New Jersey Turnpike Authority ("Defendant"). In so bringing this action, Plaintiff has sought – and been granted – leave to proceed without prepayment of fees. App. [ECF No. 1-2.]; Order [ECF No. 2]. Having granted Plaintiff in forma pauperis status, the Court now screens the Complaint pursuant to 28 U.S.C. § 1915(e)(2).

## I.   BACKGROUND

Plaintiff is a part-time toll collector for the New Jersey Turnpike Authority. Ex. at 1 [ECF No. 1-1] ("Advisory Notice"). Toward the end of 2008, Plaintiff alleges that she felt she

might be suffering from a medical issue.  Compl. 3 [ECF No. 3].[1] In January 2009, after undergoing a polysomnography, Plaintiff was diagnosed with "[m]ild to moderate obstructive sleep apnea syndrome."  Ex. at 9-12 [ECF No. 1-1] ("Polysomnography Report").  At that time, Plaintiff alerted Defendant's medical division of her medical issue.  Compl. 3.

Thereafter, Plaintiff alleges that she was suspended on multiple occasions for excessive lateness which she attributes to her sleep apnea.  Advisory Notice at 1.  Specifically, Plaintiff has provided the Court with an Advisory Notice of Disciplinary Action that documents four suspensions or instances of disciplinary conduct for "excessive lateness."  Id. According to that report, Plaintiff was suspended for three days in August 2012, five days in April 2013, ten days in April 2015, and thirty days in September 2015.  Id.  After her first suspension in August 2012, Plaintiff alleges that she approached Defendant about accessing her records which might explain this lateness, but that it was unhelpful.  Ex. at 3 [ECF No. 1-1] ("E.E.O.C. Ltr.").  During the course of several subsequent

---

[1] Plaintiff has submitted multiple documents outlining her allegations in this case.  Because the various documents contain different allegations, and consistent with this Court's obligation to liberally construe pro se filings, the Court considers allegations contained in both the initial letter filed by Plaintiff, [ECF No. 1], and the Complaint filed by Plaintiff, [ECF NO. 3], at screening.  The Court additionally considers documents attached to the letter as exhibits to her pleadings.

suspensions, Defendant and union representatives were again unhelpful in allowing Plaintiff to seek accommodation. Id.

In her initial Complaint, and in addition to providing her medical records to Defendant, Plaintiff notes that she has twice requested accommodation in writing from Defendant: on May 16, 2016 and May 26, 2016. Ltr. at 2 [ECF No. 1]. Plaintiff alleges that she received no response, or that the response was deficient. Id.; see also Ex. at 15 [ECF No. 1-1] ("Def.'s May 20, 2016 Ltr.") (Defendant's response to May 16, 2016 Letter: "Please be advised that I am not aware of any disability as you allege. Kindly contact the New Jersey Turnpike Authority Medical Section to schedule an appointment to discuss this matter."). After Plaintiff re-supplied her medical diagnostic information in her May 26, 2016, Ex. at 16 [ECF No. 1-1] ("Pl.'s May 26, 2016 Ltr."), Plaintiff does not allege that she received a response. However, since filing her Complaint, Plaintiff has informed the Court that she has been told by Defendant that she would not be accommodated. Ltr. [ECF No. 4] ("Pl.'s Feb. 22, 2017 Ltr.").

Despite her claim that she has received no response or an unsatisfactory response from Defendant throughout her pursuit of accommodation, other portions of Plaintiff's filings – specifically her letter to the Equal Employment Opportunity Commission – suggest that she was earlier offered the

3

accommodation that Defendant "would grant [Plaintiff the ability] to work out of interchange 1 at the end of the New Jersey Turnpike leading to the Delaware memorial bridge[.]" E.E.O.C. Ltr. at 3. However, that accommodation involved Plaintiff losing her seniority at her original station. Id. Plaintiff also alleges that at least one other employees was permitted to arrive late without consequence. Id.

Subsequently, Plaintiff brought claims of age and disability discrimination before the E.E.O.C. On June 30, 2016, Plaintiff received a letter from the E.E.O.C. indicating it had reviewed her charge and was unable to conclude that "the information establishes a violation of federal law on the part of [Defendant]." Ex. at 17 [ECF NO. 1-1] ("E.E.O.C. Determination"). Plaintiff sought reconsideration of this determination, and was ultimately denied. Ex. at 21 [ECF No. 1-1] ("E.E.O.C. Reconsideration"). Plaintiff alleges that the Defendant "lied with respect to [its] response [to the E.E.O.C.] and stated that [it was] never made aware of [her] disability." Compl. 3.

Plaintiff also claims that since she has pursued these claims, and twice visited Defendant's place of business "in an attempt to bring this situation to a resolution," she was rebuffed and told she needed "to be seen by the head doctor in the medical division." Id. 3. Plaintiff claims she met with

4

the "head doctor" on August 31, 2016, and was told that she needed to be seen again by her sleep apnea specialist. Ultimately, Plaintiff claims that she is "not asking for monetary compensation[,]" but is "simply requesting written accommodation acknowledging my disability so that unnecessary disciplinary actions, unfair suspensions and threats of termination will no longer be an issue." Compl. 4.

II.  **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must preliminarily screen in forma pauperis filings, and must dismiss any filing that is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Id.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain:

- (1) [A] short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

- (2) [A] short and plain statement of the claim showing that the pleader is entitled to relief; and

- (3) [A] demand for the relief sought, which may include relief in the alternative or different types of relief.

Id. "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d

5

203, 311 (3d Cir. 2009). However, in screening a complaint to verify whether it meets this standard, this Court is mindful of the requirement that pro se pleadings must be construed liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### III. **ANALYSIS**

Plaintiff does not articulate specifically the cause or causes of action she seeks to bring. Nevertheless, based upon the allegations contained within the filings, the Court construes Plaintiff's allegations as seeking to state claims for failure to accommodate under the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"), as well as a claim for disparate treatment under the NJLAD. In employment discrimination cases, both the federal and state frameworks follow the burden-shifting methodology adopted in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See Kelly v. HD Supply Holdings, Inc., Civ. No. 14-372 (RBK/AMD), 2014 WL 5512251, at *3 (D.N.J. Oct. 31, 2014). "Under this framework, a plaintiff must first establish a prima facie case of discrimination." Id. However, it has been held that a Plaintiff is not required to plead a prima facie case at the motion to dismiss stage. Id. ("Thus, this Court finds that Plaintiff was not required to plead a prima facie case in order to survive a motion to dismiss.").

6

Nevertheless, as a framework for determining whether Plaintiff's claims should proceed past screening, it is worth outlining the ultimate evidentiary showing Plaintiff will have to make to guide the Court's analysis. Petruska v. Rickett Benckiser, LLC, Civ. A. No. 14-03663 (CCC), 2015 WL 1421908, at *6 (D.N.J. Mar. 26, 2015) ("While [a p]laintiff need not establish the elements of a prima facie case in his complaint, the Court nevertheless finds that the McDonnell Douglas elements provide guidance in assessing whether Plaintiff has stated a plausible claim under the pleading standards of Twombly and Iqbal."). As such, the Court orients its screening analysis around the prima facie showing.

### A. Failure to Accommodate

In order to establish a prima facie case of failure to accommodate under the ADA and the NJLAD, a plaintiff is required to demonstrate the typical showing for disability discrimination: that "(1) [s]he is a disabled person within the meaning of the ADA [or NJLAD]; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." Maher v. Abbott Labs., Civ. A. No. 11-5161(PGS)(TJB), 2013 WL 6326488, at *9 (D.N.J. Dec. 4, 2013)

7

(quoting Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)).

Additionally, Plaintiff must allege another showing which goes to the second element of the discrimination prima facie case above. "To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been accommodated but for the employer's lack of good faith." Boles v. Wal-Mart Stores, Inc., Civ. A. No. 12-1762 (JLL), 2014 WL 1266216, at *12 (D.N.J. Mar. 26, 2014) (quoting Tynan v. Vicinage 13, 351 N.J. Super. 385, 400-01 (App. Div. 2002)); see also McQuillan v. Petco Animal Supplies Stores, Inc., Civ. A. No. 13-5773 (FLW), 2014 WL 1669962, at *6 (D.N.J. Apr. 28, 2014) ("[T]he requirements for a failure to accommodate claim under the NJLAD have been interpreted in accordance with its federal counterpart . . . ."); Fulton v. Johnson & Johnson, Civ. A. No. 05-819 (FLW), 2008 WL 544668, at *14 n.13 (D.N.J. Feb. 26, 2008) ("[S]tandards for both a prima

8

facie case and the interactive process are virtually identical under both the ADA and the NJLAD").[2]

Here, Plaintiff has demonstrated at least at the screening stage that she is a disabled person within the meaning of the ADA and NJLAD. Although the mere diagnosis of sleep apnea would be insufficient, construing her allegations liberally, Plaintiff has alleged that it impacted a substantial life activity, which is required for the ADA.[3] In the sleep study report attached as an exhibit to her Complaint, it is recommended that Plaintiff make use of a CPAP machine, which implicates sleeping and breathing difficulty coextensive with the diagnosis of sleep apnea. This sort of allegation has been looked on favorably by courts determining whether a plaintiff is disabled. Creasy v. Novelty, No. Civ. A. 404CV2296, 2005 WL 1652441, at *2 (M.D. Pa. July 6, 2005) ("Plaintiff's brief in opposition states that the 'use of a CPAP machine in order to sleep clearly makes [Plaintiff]'s condition a disability, as sleeping is a major

---

[2] Although there may be some differences between the NJLAD and the ADA with regard to the scope of disability, Gaul v. AT&T, 955 F. Supp. 346, 351 (D.N.J. 1997), or the requirement of an adverse employment action, Durham v. Atlantic City Elec. Co., Civ. No. 08-1120 (RBK/AMD), 2010 WL 3906673, at *9 n.9 (D.N.J. Sep. 28, 2010), the Court does not find those differences material in this case, as Plaintiff's failure to accommodate claim survives under each standard.

[3] The NJLAD definition of disability is more permissive. Whitehead v. County of Monmouth, Civ. No. 15-5352, 2015 WL 5545552, at *2 n.1 (D.N.J. Sep. 18, 2015).

9

life activity . . . [Plaintiff] should make such allegations in his complaint and not in his brief in opposition to the motion to dismiss."). At this very preliminary stage, Plaintiff's allegation that she suffers from sleep apnea, and the associated inference that it impacts her breathing and sleep, is sufficient under the ADA and NJLAD.

Additionally, Plaintiff has demonstrated that she is otherwise qualified to perform the job and suffered an adverse employment action. Plaintiff has presented no allegations of other issues other than lateness (purportedly caused by her sleep apnea) that she has encountered in her work. She has held the job at least since 2008. She has suggested that with an accommodation that included retaining her seniority and a transfer to an ostensibly closer location, her sleep apnea could be accommodated. At the pleading stage, under a liberal construction, this is sufficient, although at an advanced motion stage, this may well be tougher row for Plaintiff to hoe.

Likewise, with regard to showing an adverse employment action, in 2015 Plaintiff was suspended for 30 days from work for her lateness. Lanza v. Postmaster General of U.S., 570 F. App'x 236, at 239-40 (3d Cir. 2014) (suggesting suspension is an adverse employment action); Purvis-Chapman v. Silverstein, Civ. A. No. 14-4252 (JBS/AMD), 2016 WL 1261208, at *5 (D.N.J. Mar. 31, 2016) (calling suspension an adverse employment action); see

also N.J.S.A. § 34:19-2(e) (defining retaliatory action as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."). This is sufficient.

With regard to the four-prong secondary showing in a failure to accommodate context, Plaintiff has also carried her burden. Plaintiff has alleged that she requested accommodations in 2009, as well as in May of 2016 and that her requests were ultimately, and after a long and silent wait, denied. See Pizzo v. Lindenwold Bd. of Educ., Civ. A. No. 1:13-cv-03633 (JBS/JS), 2015 WL 1471943, at *12 ("A reasonable jury could find that Plaintiff made a clear request for assistance for her disability when she asked Defendant . . . for sick bank time . . . . . She then submitted doctor's notes related to her subsequent absences."). Construing the allegations liberally, Plaintiff has shown that her employer did not engage in the interactive dialogue concerning accommodation despite repeated notifications of her disability. See id. ("Rather than engage Plaintiff in an interactive process to find an acceptable accommodation, Defendant never communicated with Plaintiff regarding her sick bank request or her doctor's notes, and denied her request with no explanation on March 28, 2013, the same day it fired her."). Accordingly, under a liberal reading, Plaintiff has made this showing.

11

As such, the Court finds that Plaintiff has stated a claim for failure to accommodate and will direct the Complaint be filed and proceed past screening on this cause of action.

**B. Disparate Treatment under NJLAD**

For similar reasons, Plaintiff has also stated a claim – at the screening stage – for disparate treatment.  "In order to establish a prima facie case for allegations of disparate treatment, a plaintiff must establish that: (1) [s]he belongs to a protected class; (2) [s]he was performing h[er] job at a level that met h[er] employer's legitimate expectations; (3) [s]he suffered an adverse employment action; and (4) otherwise not within the protected class did not suffer similar adverse employment action." Sharkey v. Verizon new Jersey, Inc., Civ. A. No. 14-2788 (JLL), 2014 WL 7336768, at *6 (D.N.J. Dec. 22, 2014) (citing El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 167 (App. Div. 2005)).  For purposes of screening, the Court considers Plaintiff to be disabled, meeting element one. See Taylor v. Lincare, Civ. No. 15-6284 (RMB/JS), 2016 WL 3849852, at *3 (D.N.J. July 15, 2016).  There exists no allegation in her pleading – apart from her lateness resulting from sleep apnea – that Plaintiff was not meeting employment expectations, meeting element two.  Plaintiff was suspended thirty days for being late, meeting element three.  Finally, Plaintiff has alleged that at least one other employee boasted

12

of lateness on a number of occasions in the presence of the same supervisor who cited Plaintiff for lateness, meeting element four.  E.E.O.C. Ltr. at 4.  Accordingly, liberally construing her allegations, Plaintiff has stated a claim for disparate treatment.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's allegations survive a preliminary screening with regard to two causes of action: a failure to accommodate claim under the NJLAD and ADA and a disparate treatment claim under the NJLAD.[4]  Accordingly,

---

[4] Plaintiff additionally requests the appointment of counsel. Pl.'s Feb. 22, 2017 Ltr. 2 ("I am requesting financial assistance in relation to Court [] costs and legal representation.").  In evaluating whether an attorney should be appointed for a Plaintiff, the Court examines the merits of a plaintiff's claim to determine if it has "some arguable merit in fact and law." See Tunnell v. Gardell, No. Civ. A. 01-115 (GMS), 2003 WL 1463394, at *1 (D. Del. Mar. 14, 2003). If the Court determines the claim has factual and legal merit, then the Court examines: (1) a plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of a plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require testimony of expert witness; and (6) whether a plaintiff can attain and afford counsel on his or her own behalf. See id. (citing Parham, 126 F.3d at 457-58; Tabron, 6 F.3d at 155-56, 157 n.5).  At this stage, the Court finds Plaintiff has adequately been able to pursue her relatively straightforward claims, which do not require an overwhelming amount of further factual development.  Any credibility determinations or expert witnesses do not outweigh the factors which suggest appointment of an attorney is unnecessary at this point.  Of course, should the course of the litigation change, the Court will revisit the issue of appointment of counsel upon a request by Plaintiff.

the Court will reopen this matter and direct the Clerk of the Court to file the Complaint and issue summons. An appropriate Order follows.

                                                      s/Renée Marie Bumb
                                                      RENÉE MARIE BUMB
                                                      UNITED STATES DISTRICT JUDGE